UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Nayelli Perez, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2020-cv-07759 |
| ) | |
| The City of Aurora, and the Village of Gilberts, ) | |
| And Dustin Coppes, Michael Joswick, Todd Block, ) | Honorable Judge Edmond E. Chang |
| And Larry Suttle, each in his individual capacity ) | |
| ) | Magistrate Judge Maria Valdez |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DENISE
CROSBY'S MOTION TO QUASH SUBPOENA DUCES TECUM**

Plaintiff Nayelli Perez, for her Response in Opposition to Denise Crosby's Motion to Quash Subpoena *Duces Tecum*, states as follows:

**Summary of Argument**

**Plaintiff is Forced to Seek Ms. Crosby's Testimony
After Aurora's Numerous Misrepresentations and
Non-Responses to her Discovery Efforts**

Plaintiff is prosecuting claims for discrimination and the disparate impact of the Aurora Police Department's gang database on Hispanics and individuals of Mexican national origin. (Dkt. No. 1, Count II). On September 15, 2022, after the Court granted Plaintiff's Unopposed Motion for Leave to Issue Subpoena *Duces Tecum* to Diane Crosby (Dkt Nos. 94, 95), Plaintiff issued her subpoena *duces tecum* to Ms. Crosby for her remote deposition to take place on October 6, 2022. (A copy of the Subpoena and Plaintiff's counsel's letter accompanying it is attached as Ex. 1). Plaintiff only sought Ms. Crosby's testimony after she was forced to do so given Aurora's numerous misrepresentations and evasive non-responses to her discovery requests, including on the issue of prior citizen complaints about the discriminatory impact of its gang database, as more

1

fully set forth in Plaintiff's pending motions to compel and for sanctions against Defendant Aurora and its counsel. (Dkt Nos. 102 and 105).

**Aurora Alderwoman Garza Testifies that She Did Not
Make Statements to Reporter Crosby Attributed to her In a May 3, 2018 Article**

As one example, Plaintiff's counsel asked Aurora Alderwoman Juany Garza during her August 22, 2022 deposition about an article written by reporter Denise Crosby which appeared in the *Aurora Beacon News* on May 3, 2018. (A copy of the May 3, 2018 Article is attached as Ex. 2). The article is titled "Police in Aurora, Elgin defend gang lists amid growing criticism." (Ex. 2). In the article, Crosby relates citizen concerns regarding Aurora's use of its gang database and the police department's response to that criticism. (Id.) Ms. Crosby attributes several quotes to Alderwoman Garza, who serves the residents of Aurora's Second Ward, an area which is 84 percent Latino. (Ex. 3, August 22, 2022 Transcript of Deposition of Juany Garza, p. 10:23—11:1).

Under oath at her deposition, Alderwoman Garza denied making the statements in the May 3 article to Ms. Crosby or said she couldn't recall making them, including as follows:

> Q: And the next part of the article says, "Some community members, particularly at neighborhood meetings, have complained it contains names of those who were not in a gang or had gotten out, but had the stigma associated with being involved in street crime." Had you heard any complaints of that nature?
>
> A: No. (Ex. 3, pp. 14: 23 – 15: 6)
>
>      \*    \*    \*
>
> Q: And then it goes on to say – this article is purporting that it's quoting you – "The police department is doing a great job," she said, "but keeping a list of gang members not only can hurt those who should be on it, it is not good for the City because it puts too much emphasis on gang activity and not on all the good thing going on in the communities.
>   Did you ever make that statement?
>
> A:  No. (Ex. 3, p. 15: 7-15)

    \*    \*    \*

Q: It says, "you have to be very careful a with those lists, Garza added. Sometimes good kids make mistakes or are in the wrong place at the wrong time, and ending up on those lists can compromise their future." Have you ever made a statement to that effect?

A: I don't remember to do that – that comment. (Ex. 3, pp. 15:22-16:4).

\*          \*          \*

Q: Have you ever spoken with this particular reporter, Denise Crosby?

A: That I don't remember (Ex. 3, p. 16: 1-7) *See also*, pp. 8:24 -9:6, 9:14-23), 10:6-12,

At other times, Alderwoman Garza's answers were evasive and nonresponsive, and she claimed that the concerns that she heard from citizens were about gang drug use and citizens' concerns for their safety, which is nonsensical in the context of the article's subject matter. (Ex. 3, p. 10:13-22). Alderwoman Garza was represented by Aurora's counsel, John Murphey, at her deposition and her attorneys' fees are being paid by Aurora. (Ex. 3, pp. 5: 7-11, 7:11-16).

### Crosby Goes Silent Regarding the Subpoena Until Less than 48 Hours Before her October 6, 2022 Deposition

Despite Plaintiff's counsel's invitations via two separate correspondences to Ms. Crosby to have a dialogue that might obviate the need for a deposition, Ms. Crosby chose to go silent regarding the subpoena until less than 48 hours before the October 6 deposition. (Ex. 1, September 15, 2022 Letter from S. Vucko to D. Crosby and accompanying subpoena *duces tecum*; Ex. 4, September 30, 2022 email from J. Vucko to D. Crosby). Ms. Crosby's counsel, Mr. Mandell, contacted Plaintiff's counsel less than 48 hours before the deposition and Plaintiff's counsel spoke with Mr. Mandell the day before the deposition on October 5. Mr. Mandell represented to Plaintiff's counsel that he had a hearing on October 6 and could not attend Ms. Crosby's deposition that day. Plaintiff's counsel agreed to reschedule the deposition to accommodate Mr. Mandell's schedule and rescheduled it for October 14. Plaintiff's counsel also agreed to share the transcript of Alderwoman Garza's testimony with Mr. Mandell and shared the transcript after confirming

3

with Defendants' counsel that Defendants had waived the 14-day designation period and had no confidentiality designations pursuant to the Confidentiality Order. (Dkt. No. 49).

### Mr. Mandell Represents to Plaintiff's Counsel that Ms. Crosby Has No Responsive Documents And He Cannot Articulate Any Reason Why the Subpoena Poses An Undue Burden To Ms. Crosby On his October 11 Call with Plaintiff's Counsel

Three days before the rescheduled deposition, Plaintiff's counsel again spoke with Mr. Mandell by phone. Mr. Mandell represented that his client had no notes or other documents in response to the subpoena's rider. In addition, he raised, for the first time, that Respondent had objections to the subpoena. Mr. Mandell also raised for the first time the possibility of his client signing a bare-bones affidavit. Given the fact that the deposition was scheduled to proceed later that same week, the need to have a dialogue with Ms. Crosby before reducing her statements to writing in an affidavit, the quickly approaching fact discovery closure date and Plaintiff's counsel's other case matters scheduled for that week, Plaintiff's counsel stated that there was not adequate time to do so and would be proceeding with the deposition as scheduled. Mr. Mandell was unable to articulate why the subpoena was purportedly an undue burden during the call. He then filed a motion to quash Plaintiff's subpoena on October 11, articulating reasons for the first time that the subpoena purportedly imposes an undue burden on Ms. Crosby *as a member of the press* and lacks particularity/is overly broad. (Dkt No. 111).

### The Subpoena for a Remote Deposition, Which Is Anticipated to Last Approximately 1-2 Hours, Does Not Pose An Undue Burden on Ms. Crosby

Plaintiff's counsel intends to conduct the deposition remotely, and Ms. Crosby would not even have to leave her home to comply with the subpoena. (Ex. 1). Moreover, Plaintiff has conducted several depositions in this matter in approximately 2 hours or less time each and anticipates that the deposition will take approximately that amount of time on the limited subject

of Ms. Crosby's communications with Alderwoman Garza regarding the Aurora' Police Department's gang database in 2019 and her customary practices as a journalist in taking statements from individuals and attributing them to sources in her articles. For the reasons set forth below, the Court should deny Ms. Crosby's motion to quash in its entirety and require Ms. Crosby to comply with the subpoena *duces tecum* and testify under oath at her remote deposition within 7 days of the Court's entry of an Order denying her motion.

## Legal Authority

"As indispensable as is the role of the press in a free society, journalists and the media have 'no special immunity from the application of general laws.'" *Mosely v. City of Chicago*, 252 F.R.D. 421, 426, 2008 U.S. Dist. LEXIS 61042, *15 (N.D. Ill. August 11, 2008) citing *Branzburg v. Hayes*, 408 U.S. 665, 683 (1972). "Journalists are not exempt from the principle that the public has a right to everyman's evidence, unless protected by a constitutional, common-law, or statutory privilege." *Id*. at 436 citing *Branzburg*, 408 U.S. at 688. However, although "several jurisdictions have recognized a qualified reporter's privilege, the Seventh Circuit is not one of them." *Beverly v. Watson*, 2016 U.S. Dist. LEXIS 87725, *16, 44 Media L. Rep. 2717, 2016 WL 3633316 (N.D. Ill. July 7, 2016).

Respondent Crosby's reliance upon the *Patterson* case as establishing what is tantamount to a "qualified reporter's privilege" is misplaced and unsupported by authority. "Properly read, *Patterson* does not create some special or heightened burden for subpoenas to journalists seeking audio tapes of interviews, nor did it announce a *per se* rule of exclusion, nor could it given *McKevitt's* directive to district courts not to treat journalists specially, but merely to ensure that subpoenas directed to them are "reasonable in the circumstances.'" *Mosely*, 252 F.R.D. 431 at 435 citing *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003). Rather, the proper inquiry is the balancing process required by Rule 45. *Id.*

5

"A party seeking to quash a subpoena bears the burden of demonstrating that the subpoena requires the disclosure of privileged information or subjects the party to an undue burden." *Am. Soc'y of Media Photographers v. Google, Inc.*, 2013 U.S. Dist. LEXIS 64041, *5, 2013 WL 1883204 (N.D. Ill. May 6, 2013). Under Fed. R. Civ. P. 45, district courts quash subpoenas in four circumstances. F.R.C.P. 45(d)(3). Respondent does not argue – nor can she argue – that any of the first three factors is applicable. Rather, Respondent's motion is solely based on the fourth factor – an alleged undue burden to Ms. Crosby.

The purported undue burden of a remote deposition of approximately 2 hours or less time on these limited topics is minimal. Moreover, Ms. Crosby's counsel has already represented to Plaintiff's counsel that no responsive documents exist, so any arguments regarding the breadth of the document requests are moot. In addition, Plaintiff's need for the information, which is central to Counts II and VI of her Complaint for discrimination and disparate impact on the basis of race/national origin in violation of Plaintiff's Title VII rights and for violation of 42 U.S.C. Section 1981, outweighs any alleged undue burden to Respondent. As a result, the Court should deny Respondent Crosby's motion.

## ARGUMENT

**I.     In The Seventh Circuit, Subpoenas Directed To Journalists And The Media, Like Those To Any Non-Party, Need Only Be "Reasonable In The Circumstances"**

"*McKevitt* teaches us that undue burden, like negligence, does not exist in the air, and that subpoenas to journalists are not to be subjected to an analysis under Rule 45 that differs from that applied when the subpoena is directed to a non-journalist:" *Mosely*, 252 F.R.D. 421, 427 citing *McKevitt* 339 F.3d at 533. "[R]ather than speaking of privilege, courts should simply make sure that a subpoena duces tecum directed to the media, like any other subpoena duces tecum, is reasonable in the circumstances, which is the general criterion for judicial review of subpoenas."

*Mosely* at 427. There are no "special criteria merely because the possessor of the documents or other evidence sought is a journalist." *Id.* "Relevant to an exercise of discretion under Rule 45 are the following somewhat overlapping considerations: the likelihood that compliance will result in production of the information, whether the discovery is unreasonably cumulative or duplicative, whether the information sought is readily obtainable from another, more convenient, less burdensome (but equally reliable) source, and whether the burden of the proposed discovery outweighs its likely benefit." *Id.* at 427. The discovery requested is reasonable under the circumstances. Plaintiff has exhausted her other avenues for conducting discovery on the discriminatory impact of Aurora's gang database on the Hispanic community in Aurora through interrogatories, document requests and requests for admission to Aurora and the depositions of its corporate representative, Alderwoman Garza and Defendant Suttle. The subpoena is not unreasonably cumulative or duplicative and there is no more convenient, less burdensome (but equally reliable) source because Plaintiff has been unable to obtain truthful responses from Defendant Aurora and its representatives. Moreover, the burden of the discovery on Ms. Crosby does not outweigh the benefit to Plaintiff.

    **II.**    **The Information Plaintiff Seeks from Ms. Crosby is Central to Plaintiff's Claims in Count II for Disparate Impact and Count VI for Violation of Section 1983 and Plaintiff has a Substantial Need for It**

The standard for determining the scope of discovery to which a party is entitled is found in Federal Rule of Civil Procedure 26. Rule 26(b) provides that '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . .' FED. R. CIV. P. 26(b)(1)." *Beverly v. Watson*, 2016 U.S. Dist. LEXIS 87725, *21, 44 Media L. Rep. 2717, 2016 WL 3633316 (N.D. Ill. July 7, 2016). Furthermore, "[u]nder Rule 26, matters being sought must be relevant to a claim or defense, but '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence.'" *Id.* citing Fed. R. Civ. P. 26(b)(1). "For this reason, "[r]elevancy has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Wi-Lan, Inc. v. LG Elecs., USA, Inc.*, 2011 U.S. Dist. LEXIS 4606, *6, 2011 WL 148058 (N.D. Ill. January 18, 2011).

Plaintiff is prosecuting claims for discrimination and the disparate impact of Aurora's gang database on her because she is Hispanic and of Mexican national origin in violation of Title VII in Count II of the Complaint. (Dkt No. 1). Her allegations in the Complaint include the following, to which her subpoena to Ms. Crosby relates:

¶ 141: The APD Gang Database disparately impacts Hispanic individuals and individuals of Mexican ancestry.

¶ 142: In recent years, APD members have faced numerous public allegations of racism against black and Latinx individuals. (Complaint, Dkt. No. 1).

Furthermore, Plaintiff brings claims against Aurora and Officers Coppes and Suttle for violations of 42 U.S.C. §1981 (enforceable through §1983), which include the following allegations:

181. The APD and Aurora knew or should have known about the APD's discriminatory conduct, including without limitation the discriminatory conduct of Coppes and Suttle against Nayelli.

182. The APD and Aurora failed to take remedial action for the APD's discriminatory conduct.

191. Aurora is liable for violations to Nayelli's constitutional rights by Coppes and Suttle.

Aurora is liable for individual Defendants Coppes' and Suttle's violations of Section 1981 based on *Monell v. Dept. of Soc. Servs. of the City of New York*. 436 U.S. 658. "Liability in a §1981 action against a local government is constrained by the remedial provisions of §1983." *Campbell v. City of Chicago*, 2013 U.S. Dist. LEIS 119603, *10, 2013 WL 4501026 (N.D. Ill. August 21, 2013). "This means that in order to state a claim under §1981 against a local government entity or municipality, a plaintiff must establish municipal liability under *Monell*." *Id.* "To establish

8

municipal liability under *Monell*, a plaintiff must produce evidence of 'an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Id. citing Monell* at 694. Mr. Vucko cited the *Monell* inquiry in support of relevance on the meet and confer call. The issue of whether Aurora's government officials are aware of the discriminatory impact of the gang database and have heard complaints about the gang database is relevant to Plaintiff's claims in Counts II and VI and the municipality's liability and therefore the Court should deny Respondent's motion.

### III. The Subpoena Does Not Pose an Undue Burden to Ms. Crosby

- Respondent's arguments that the subpoena imposes an undue burden on Ms. Crosby are belied both by the facts and the law. First, Mr. Mandell has represented to Plaintiff's counsel that his client has no notes or other documents responsive to the Rider. Therefore, his argument that the Rider is overbroad and lacks particularity is moot. Furthermore, the time covered is reasonable and subject matter is sufficiently particular: statements attributed to Alderwoman Garza in an article written by Crosby dated May 3, 2018. (Ex. 2). Finally, Respondent Crosby's reliance upon the *Patterson* case as establishing what is tantamount to a "qualified reporter's privilege" is misplaced and unsupported by authority. Indeed, Respondent's argument in Section V of her motion "is not a statement of burden, but the articulation of the rationale courts have used to fashion a reporter's privilege." *Mosely* at 432. The Seventh Circuit does not recognize a qualified reporter's privilege. *Beverly*, 2016 U.S. Dist. LEXIS 87725, *16.

#### A. Alderwoman Garza is not a Confidential Source

Respondent argues that the subpoena will hamper her attempts to protect the confidentiality of information she has received, ignoring the fact that *Alderwoman Garza is not a confidential source*. (Ex. 2). "Publication of interviews with nonconfidential sources is consistent with the

9

expectation – if not the desire – of the interviewee that there be public dissemination. . . The possibility that at some point in the future a journalist might have to make a further disclosure of that which either was already publicly disclosed or could have been had the journalist decided to do so, does not change the essential nature of the understanding the interviewee and the journalist had or impose a risk meaningfully different from that which inhered in the interview." *Mosely v. City of Chicago*, 252 F.R.D. 421, 431-432. In contrast to the *Am. Soc'y of Media Photographers v. Google, Inc.* case, Plaintiff's subpoena does not require Respondent to divulge any confidential information, which weighs against finding that it poses an undue burden on Respondent. 2013 U.S. Dist. LEXIS 64041, *13, 2013 WL 1883204 (N.D. Ill. May 6, 2013). As in the *Mosely* case, Respondent's speculative statements about the possible impacts on Ms. Crosby and her news organization are "speculative" and do "not comport with the kind of specific and particularized demonstration courts have required to establish burden or 'good cause.'" *Mosely* at 432.

    **B.**    **Respondent Waived Any Claim of Privilege Under Fed. R. Civ. P. 45 By Her Failure to Produce a Privilege Log**

Despite previously claiming that she had no responsive documents and despite the fact that there is no qualified reporter's privilege in the Seventh Circuit, Respondent now for the first time argues that the subpoena "likely" involves "confidential research and development for the Aurora Beacon News." (Dkt 111, p. 12). Respondent has not "provided a privilege log itemizing the documents for which [she has] claimed a privilege even though Rule 45(d)(2)(A)(ii) requires that a person withholding subpoenaed information under a claim of privilege must: describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." *Mosely* at 425-427. Just as in *Mosely*, "by failing to comply with Rule 45," Respondent has waived whatever claim of privilege she may have had. *Id.* at 426-7 citing Advisory Committee Notes to 1991

Amendments to Fed. R. Civ. P. 45(d). Because Respondent has not articulated any undue burden posed by the subpoena on Respondent and because the subpoena seeks information that is relevant to Plaintiff's claims, the Court should deny Respondent's motion.

## Conclusion

**WHEREFORE**, for the reasons set forth above, Plaintiff respectfully requests that the Court enter an Order (1) denying Respondent's Motion to Quash Subpoena *Duces Tecum*; (2) requiring Denise Crosby to appear for her remote deposition within seven days of the entry of an Order denying her motion; and (3) for such other relief as the Court deems just.

Dated: October 18, 2022                                                  Respectfully Submitted,

Nayelli Perez


/s/     Stacey Vucko
STACEY B. VUCKO
Attorney for Plaintiff


STACEY B. VUCKO (IL BAR NO. 6296832)
VUCKO LAW LLP
2208 Midwest Rd., Suite 104
Oak Brook, IL 60523
312-522-2517
svucko@vuckolaw.com