IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nayelli Perez, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2020-cv-07759 |
| | ) | |
| v. | ) | |
| | ) | |
| The City of Aurora, and the Village of Gilberts, | ) | |
| Dustin Coppes, Michael Joswick, Todd Block, | ) | Honorable Judge Edmond E. Chang |
| and Larry Suttle, each in his individual capacity | ) | Magistrate Judge Maria Valdez |
| | ) | |
| Defendants. | ) | |

**NON-PARTY DENISE CROSBY'S REPLY IN SUPPORT OF HER MOTION TO QUASH THE SUBPOENA FOR DEPOSITION**

Non-Party Denise Crosby, by her attorneys, for her reply in support of her motion to quash the Subpoena for Deposition served by Plaintiff, Nayelli Perez ("Plaintiff"), states as follows:

**INTRODUCTION**

Plaintiff's Response in Opposition to non-party Denise Crosby's motion to quash the subpoena fails not only to establish how the purported need for the information sought outweighs the burden it would place on Crosby, but also to establish how the information sought here is more than *just barely* relevant to this matter. Rather than address the actual arguments raised by Crosby, Plaintiff tries to distract the Court by focusing on arguments that Crosby did not make, such as that Crosby asserts an unrecognized reporter's privilege or is claiming that Alderwoman Garza is a confidential source. But Crosby does not and need not rely on such arguments because under the reasoning of the cases Crosby and Plaintiff cite, Plaintiff cannot establish actual relevance or a substantive need for Crosby's deposition and all "emails, text messages, audio or

video recordings, relating to statements attributed to Aurora Alderwoman Juany Garza in the attached Beacon news article." (Dkt. No. 111, Ex. B).

Federal Rule 45 provides that an issuing court must quash or modify a subpoena that "subjects a person to undue burden." FED. R. CIV. P. 45(c)(3)(A). Courts in the Seventh Circuit determining whether there is undue burden conduct the "relative hardship test" (which Plaintiff ignores) that examines whether (1) the party subpoenaed is a non-party in the underlying suit; (2) the information requested is relevant; (3) the party requesting the information has a substantial need for the documents; (4) the document request is overly broad; (5) the time period the request covers is reasonable; (6) the request is sufficiently particular; and (7) the request imposes a burden. *Am. Society of Media Photographers v. Google, Inc.*, No. 13 C 408, 2013 U.S. Dist. LEXIS 64041, at *5 (N.D. Ill. May 6, 2013).

In this matter, the lack of relevance or substantive need alone should compel the Court to quash the subpoena, but when coupled with the weight of the other factors, it is clear that the subpoena places an undue burden on Crosby and that the Court should quash it under Federal Rule 45.

## Argument

Rather than respond to the arguments Crosby actually made in her motion, Plaintiff dedicates a large part of her response to issues that Crosby did not raise. For example, Plaintiff argues that the Seventh Circuit does not recognize a qualified reporter's privilege with regard to responding to a subpoena. (Response pp. 5-7). Similarly, Plaintiff argues that Alderwoman Garza is not a confidential source (Response pp. 9-10) despite the fact that Crosby does not argue that she is. Crosby moved to quash pursuant to Rule 45 and the multi-factor test set forth in *Am. Society of Media Photographers*, not in reliance on any sort of qualified privilege afforded to

journalists. An analysis weighing those relevant factors demonstrates that the Court should quash the Subpoena.

> I. **Plaintiff has Failed to Establish the Relevance or Need for the Information**

Crosby argued that the second factor of relevance and third factor of need in the relative hardship test weigh in favor of quashing the subpoena, and Plaintiff has failed to establish how information sought by the subpoena is relevant or necessary to Plaintiff's discrimination case. Plaintiff's motion for leave to issue the subpoena merely indicates "The need for the deposition of Ms. Crosby only arose because of Alderwoman Garza's recent testimony regarding the Beacon Article, which is also quoted in Plaintiff's Complaint." (Dkt. No. 94, ¶ 5). It is therefore apparent that Plaintiff's goal, *at most*, is to attempt to impeach Alderwoman Garza's August 22, 2022 deposition testimony by eliciting contrasting testimony from Crosby as to what Alderwoman Garza told Crosby in an interview over four years ago. However, "simply speculating" that materials "contain impeachment information or admissions," is only relevant "in [the] broadest and weakest sense." *Patterson v. Burge*, No. 03 C 4433, 2005 U.S. Dist. LEXIS 1331, at *8 (N.D. Ill. Jan. 5, 2005). Moreover, Plaintiff cannot show how the statements the Article attributes to Garza from May 2018 are relevant or necessary to proving *any* issue in Plaintiff's civil rights litigation based on actions that allegedly happened more than a year later.

Plaintiff's attempt to argue that the information she seeks is both relevant (and needed ultimately fails. Plaintiff argues that she is bringing claims for discrimination based on the alleged "disparate impact of Aurora's gang database *on her*." (Response at 8) (emphasis added). She also asserts that the information sought is related to the following claims from her Complaint:

> ¶ 141: The APD Gang Database disparately impacts Hispanic individuals and individuals of Mexican ancestry.

> ¶ 142: In recent years, APD members have faced numerous public allegations of racism against black and Latinx individuals. (Complaint, Dkt. No. 1).
>
> ¶ 181: The APD and Aurora knew or should have known about the APD's discriminatory conduct, including without limitation the discriminatory conduct of Coppes and Suttle against Nayelli.
>
> ¶ 182: The APD and Aurora failed to take remedial action for the APD's discriminatory conduct.
>
> ¶191: Aurora is liable for violations to Nayelli's constitutional rights by Coppes and Suttle. Aurora is liable for individual Defendants Coppes' and Suttle's violations of Section 1981 based on *Monell v. Dept. of Soc. Servs. of the City of New York*. 436 U.S. 658. "Liability in a §1981 action against a local government is constrained by the remedial provisions of §1983." *Campbell v. City of Chicago*, 2013 U.S. Dist. LEIS 119603, *10, 2013 WL 4501026 (N.D. Ill. August 21, 2013). "This means that in order to state a claim under §1981 against a local government entity or municipality, a plaintiff must establish municipal liability under *Monell*." *Id.* "To establish municipal liability under Monell, a plaintiff must produce evidence of 'an express policy causing the loss, a widespread practice constituting custom or usage that caused the loss, or causation of the loss by a person with final policymaking authority." *Id.* citing *Monell* at 694.

Response at 8-9.

However, Plaintiff has not – and cannot – demonstrate *how* Crosby's testimony regarding Alderwoman Garza's interview would be relevant to the above claims. This is a discrimination case based on the alleged impact of the Database on *Plaintiff*, but she does not allege that she was even named in the database itself (instead, her brother was[1]), and as such, Plaintiff is not someone Garza could have even been speaking of when she was quoted about the Database in 2018. Second, the Response ignores that neither of the quoted statements attributed to Alderwoman Garza indicates that she was aware of or otherwise could speak to the potential "disparate" impact of the Database *on Hispanic individuals and individuals of Mexican ancestry*.

---

[1] Plaintiff's attempt to assert a disparate impact claim based on her brother's improper listing in the gang database is puzzling especially when apparently, according to the Illinois Department of Corrections Database (of which this Court may take judicial notice), her brother was convicted in May of 2019 of "possession of a firearm by a gang member." *See* Exhibit A hereto.

Further, it is clear from the face of the published statements that Alderwoman Garza was not discussing whether there were public allegations of racism by APD against any group – let alone against Hispanic or Latinx people. The statements say nothing about alleged discriminatory conduct by the police, *especially* conduct by individually identified officers, and the generalized statements attributed to Alderwoman Garza in the Article about hearing unspecified complaints from the community do not relate to the harm alleged by Plaintiff that she was discriminated against based on race or sex in her job as a police officer. Accordingly, any argument that the testimony is relevant to a *Monell* claim simply lacks merit. Finally, Plaintiff completely ignores Crosby's arguments that (1) it is not clear that Alderwoman Garza's deposition testimony is inconsistent with the statements attributed to her in the Article or if, instead, she simply could not recall statements that she made to Crosby four years ago (Dkt. No. 111, p. 7) and (2) "a witness cannot be impeached by contradiction as to collateral or irrelevant matters." *U.S. v. Lloyd*, 71 F.3d 1256, 1268 (7th Cir. 1995) (Dkt. No. 111, p. 9). Given the substance of Alderwoman Garza's published statements, they are clearly collateral to any issue in this case.

Plaintiff also relies on wholly unsupported allegations regarding Respondent's attempted delay and her alleged failure to timely object to the Subpoena. These allegations are specious. Respondent's counsel promptly contacted Plaintiff's counsel and requested a copy of the deposition transcript upon which plaintiff's motion for leave to issue this subpoena was based so that he could evaluate the relevance of the testimony and documents sought by the Subpoena. *See* Exhibit B. Plaintiff did not provide that deposition transcript for almost a week. *See* Exhibit C. Moreover, Plaintiff's counsel refused to articulate the relevance of Respondent's testimony to any issue in the case.

Plaintiff clearly hopes that her arguments on collateral issues will obfuscate the serious flaw in her Response – that relevance (if any), is established only in its broadest and weakest sense, and that this factor cannot overcome the undue burden Crosby will face in having to comply with the subpoena. Therefore, no matter how wide a net Plaintiff attempts to cast, the Court should reject Plaintiff's irrelevant arguments and quash the Subpoena.

## II. Numerous Other Factors Outweigh the Purported Relevance or Need for the Information

### A. Plaintiff Concedes in her Response that Crosby Remains a Non-Party to the Underlying Litigation

As noted in the Motion to Quash, the first factor of the relative hardship test weighs in favor of quashing the subpoena because courts recognize that non-parties (which Crosby unquestionably is) are "entitled to somewhat greater protection," *Am. Society of Media Photographers*, 2013 U.S. Dist. LEXIS 64041 at *6. Moreover, in cases involving non-parties, "the possibility of mere relevance may not be enough [to support enforcing the subpoena]." *Id.* at *6. As set forth in Section I, Plaintiff's response demonstrates that she can only establish *mere* relevance of the information sought *at best* – if at all. Thus, the first factor weighs in favor of granting Crosby's motion to quash.

### B. Plaintiff Fails to Establish in Her Response how the *Subpoena* is Not Overly Broad and Not Particular

Crosby also argued in her Motion to Quash that the fourth and sixth factors – whether the Subpoena is overly broad in scope or otherwise not particular – also weigh in favor of granting the motion. Plaintiff fails to rebut that argument. As Crosby previously noted, the *subpoena itself* is marred by overbreadth and lack of particularity, given that Plaintiff seeks not only Crosby's deposition but "[a]ll documents, including emails, text messages, audio or video recordings,

6

relating to statements attributed to Aurora Alderwoman Garza in the attached Beacon news article."

Plaintiff argues that counsel for Crosby has represented in conversations that Crosby has no notes or other documents responsive to the Subpoena, and because of this, the argument that the Subpoena is overbroad and lacks particularity is moot. (Response at 9). However, whether or not Crosby possesses notes or documents responsive to the Subpoena does not change the fact that the subpoena *on its face* summons Crosby to not only appear via deposition but also produce any and all documents related to all statements made by Alderwoman Garza. Further, any assurances by Plaintiff's counsel that the time the actual deposition will consume, or that the deposition will be "limited" to Crosby's communications with Alderwoman Garza regarding the Aurora' Police Department's gang database in 2019 and Crosby's practices as a journalist fail to assuage the concerns with the current scope *of the Subpoena itself*. The overbroad and non-particular demand on Crosby for all notes, emails, and recordings that are not probative of any issue in this litigation, as well as a deposition of Crosby at any length at all, subject Crosby to an undue burden. *See City of Rockford v. Mallinckrodt Ard*, No. 17 CV 50107, 2020 U.S. Dist. LEXIS 259038, at *14 (N.D. Ill. May 27, 2020) (quashing a subpoena for being overbroad on its face and as drafted seeking information that was not relevant to the case). These factors therefore weigh in favor of a finding that the request is unduly burdensome and granting Crosby's motion to quash.

### C. Plaintiff's Response Fails to Adequately Demonstrate How the Request Does Not Impose a Burden on Ms. Crosby and the Press

Finally, the Subpoena imposes a burden on Crosby that warrants quashing by this Court. As Crosby argued in the Motion to Quash, the final factor in the relative burden test tips the scales in favor of granting Crosby's motion to quash where the purported relevance of the

information does not outweigh (1) the negative impact on the "important work" of the press, *Patterson*, 2005 U.S. Dist. LEXIS 1331 at *12; (2) the impact on potential sources; *Bond*, 2006 U.S. Dist. LEXIS 46279 at *14; and (3) the impact on confidential research or trade secrets of the journalism profession. *Am. Society of Media Photographers*, 2013 U.S. Dist. LEXIS 64041 at *13-14. As these cases demonstrate, the determination of the burden on the non-party journalist is not limited to an estimate of the time to take the deposition (Response p. 9), or even the time needed to prepare for the deposition or the cost of hiring counsel to attend the deposition, but the impact on the business of the journalist. For example, notwithstanding that Alderwoman Garza is not a confidential source, the fact that a journalist testifies contrary to a source or produces notes of an interview may well impact the decision of future sources (confidential or not) from providing information to the journalist. Additionally, where certain information is already public (*i.e.*, Alderwoman Garza is identified and her statements are set forth in the Article), the subpoenaing party must be able to explain why, specifically, it needs other documents such as "interview notes or tapes" and "what those might add to the mix, if anything." *Bond v. Utreras*, No. 04 C 2617, 2006 U.S. Dist. LEXIS 46279, at *16 (N.D. Ill. June 27, 2006). Again, Plaintiff has failed to meet her burden.

      Moreover, even though the Seventh Circuit does not recognize a qualified privilege for journalists in responding to subpoenas, numerous cases Crosby cites – and the *Mosely v. City of Chicago*, 252 F.R.D. 421, 2008 U.S. Dist. LEXIS 61042 (N.D. Ill. August 11, 2008) case upon which Plaintiff heavily relies – have held that purported relevance of information sought did not outweigh the burden on the respondent. Indeed, in *Mosely*, the court denied the motion to compel the testimony of the journalist finding that because "nothing in the article reflect[ed] statements . . . [that involved plaintiff's claims], it becomes exceedingly unlikely that the subpoenaed

8

information [would] contain any relevant information within the meaning of Rule 26." The *Mosely* court only granted the motion to compel where the article revealed the subpoenaed journalist had conversations with the *Plaintiff* in the case about events "at the epicenter of [the] complaint" and therefore "[u]nlike the situations in *Northwestern Memorial Hospital*, *Hobley*, and *Patterson*, there is every reason to conclude that the subpoenaed information is likely to contain critical information that could constitute or lead to admissible evidence." *Id.* at *10. Even the *Mosely* court recognized that "indiscriminate enforcement of subpoenas to news organizations based solely on a finding of 'mere relevance,' could have an undue burden on journalists and the media. That concern could not be more valid." *Id.* at *42 (internal citation omitted).

Here, the information sought is not relevant like the information was in *Mosely* – Alderwoman Garza is not even a party to the case at issue nor a "key witness" to the discriminatory acts alleged. Only *after* finding that the information sought was central to the case did the *Mosely* court go on to discuss the burden on journalists – but here, the clear lack of relevance in no way outweighs the burden on Crosby. In any event, to the extent that Plaintiff purports to be seeking information about complaints made about the gang list, the most likely place where those complaints were lodged – and from which to receive those complaints – is the City of Aurora, not an individual member of the Aurora City Council. Plaintiff's explanation that the City of Aurora made "numerous misrepresentations and evasive non-responses to [Plaintiff's] discovery requests" (Response p. 1) is not a reason to burden Crosby with the subpoena.

Finally, Plaintiff argues that Crosby waived any privilege because she did not produce a privilege log. (Response pp. 10-11). This argument defies logic – Crosby has moved to quash the

9

subpoena pursuant to Rule 45 and there is no requirement that she submit a privilege log in response to the Subpoena prior to the Court ruling on Crosby's motion. Plaintiff's reliance on *Mosely* is misplaced because that case was before the court on the subpoenaing party's motion to compel, not on the subpoena recipient's motion to quash pursuant to Rule 45. Unlike the situation in *Mosely*, Crosby as the recipient of the subpoena has not simply failed to comply with a subpoena, she as properly moved the Court to determine whether the Subpoena the Plaintiff issued is valid.

## CONCLUSION

For the reasons set forth above, Denise Crosby respectfully requests that this Court enter an order quashing the Subpoena and granting all other relief the Court deems appropriate.

Date: October 21, 2022											DENISE CROSBY

													By:   /s/ Steven P. Mandell
															One of her attorneys

Steven P. Mandell (#6183729)
Brian D. Saucier (#6226006)
Lyndsey M. Wajert (#6340204)
Mandell Menkes LLC
333 W. Wacker Drive, Suite 450
Chicago, Illinois 60606
Phone: 312-251-1001
smandell@mandellmenkes.com
bsaucier@mandellmenkes.com
lwajert@mandellmenkes.com

*Counsel for Non-Party Denise Crosby*

## **CERTIFICATE OF SERVICE**

      The undersigned, an attorney, certifies that a copy of the foregoing document has been served on October 21, 2022 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

/s/ Steven P. Mandell